Simon Franzini (Cal. Bar No. 287631)
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069
simon@dovel.com

*Attorneys for Plaintiff and the putative Classes*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TYLER BAKER,** individually and on behalf of all others similarly situated, | Case No. 5:21-cv-790 |
| *Plaintiff,* | **CLASS ACTION COMPLAINT** |
| *v.* | **DEMAND FOR JURY TRIAL** |
| **SUNPOWER CORP,** a Delaware corporation, | |
| **MODERNIZE INC.**, a Delaware corporation, and | |
| **QUINSTREET, INC.**, a Delaware corporation, | |
| *Defendants,* | |

## CLASS ACTION COMPLAINT

Plaintiff Tyler Baker ("Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant SunPower Corporation ("Defendant SunPower" or "SunPower"), Defendant Modernize Inc. ("Defendant Modernize" or "Modernize"), and Defendant QuinStreet, Inc. to stop Defendants from violating the Telephone Consumer Protection Act ("TCPA") by making pre-recorded telemarketing calls without prior express written consent, including to consumers who registered their phone numbers on the National Do Not Call registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendants' conduct. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## INTRODUCTION

1.      As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone.  The States likewise field a constant barrage of complaints.  For nearly 30 years, the people's representatives in Congress have been fighting back."  *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

2.      The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

3.      A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

4.      When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

Class Action Complaint                                                    Case No. 5:21-cv-790

5.      By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day.  *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

6.      The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

7.      Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

8.      According to an online robocall tracking service, 3.3 billion robocalls were placed in June 2020 alone, at a rate of 111.2 million per day. www.robocallindex.com (last visited July 28, 2020).

9.      The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018.  FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

10.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC."  Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.

11.     "The FTC receives more complains about unwanted calls than all other complaints combined."  Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).

## PARTIES

12.     Plaintiff Tyler Baker is a resident of Underhill, Vermont.

13.     Defendant SunPower Corporation ("SunPower") is a Delaware corporation headquartered in San Jose, California.  SunPower conducts business throughout this District and throughout the U.S.

14.     Defendant Modernize Inc. is a Delaware corporation headquartered in Austin, Texas, or alternatively merged with Defendant QuinStreet, Inc.  Defendant QuinStreet, Inc. is a Delaware

corporation headquartered in Foster City, California.  Defendant QuinStreet, Inc. merged with (directly or indirectly), acquired substantially all the assets of, and/or otherwise assumed the liabilities of Defendant Modernize, Inc., and/or there is such a unity of interest and ownership between the two that separate personalities of the two corporations do not exist.  In addition and/or in the alternative, Defendant QuinStreet, Inc. owns and operates Modernize.com and related operations.  In this Complaint, Defendant Modernize, Inc. and Defendant QuinStreet, Inc. are referred to collectively as "Modernize."  Modernize conducts business throughout this District, and throughout the United States.

## JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

16.    This Court has personal jurisdiction over SunPower because SunPower's principal place of business is in this district, and because SunPower's wrongful conduct giving rise to this case took place in, or was directed to, this district.  This Court has personal jurisdiction over Modernize because Modernize's principal place of business is in this district, and/or because Modernize's wrongful conduct giving rise to this case took place in, or was directed to, this district.

17.    Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants conduct significant amounts of business transactions within this District and because wrongful conduct giving rise to this case took place in or was directed to this District.  In addition, venue is proper in this District because Defendants are located in this District.

## COMMON ALLEGATIONS

18.    Defendant Modernize operates a platform that connects consumers with service companies, including companies that provide solar panel installations.

19.    Defendant SunPower designs and manufactures solar panel solutions for businesses and residential properties.

20.    SunPower outsources a significant part of its sales, offering commission rates of $75 or more per booked solar panel installation appointment.

3

21.     Modernize places outbound telemarketing calls to consumers nationwide, including on behalf of SunPower to generate solar installation appointments for SunPower, as per Plaintiff's experience.  The express purpose of these calls is to solicit call recipients to purchase products, including SunPower products.  These calls use artificial and/or pre-recorded voices.

22.     Modernize has a page on its website specifically designed to generate quotes on behalf of SunPower:



https://modernize.com/contractors/ca/san-jose/sunpower-pvfmcmsochmzximn

23.     In addition to the above, Modernize operates Modernize Inbound Calls, which serves as a portal for contractors like SunPower to register online and begin receiving telephone leads. [1]

24.     These leads are called by Modernize and transferred live to contractors like SunPower. [2]

25.     In a job posting for a Quality Assurance Specialist, Modernize references its relationship with SunPower:

---

[1] https://www.businesswire.com/news/home/20180412005338/en/ModernizeTM-Releases-%E2%80%9CInbound-Calls%E2%80%9D-to-Better-Serve-Small-Businesses-Across-the-Country
[2] *Id.*

Class Action Complaint                                    Case No. 5:21-cv-790



https://www.talent.com/view?id=9b86f5a6e395 (underlining added)

26.    SunPower is aware of, consented to, and/or acquiesced in Modernize's making the telemarketing phone calls to consumers described above.  Indeed, SunPower is aware of and received leads generated from the telemarketing phone calls from Modernize.

27.    SunPower pays Modernize for each lead that it provides who books an appointment for a solar quote from SunPower.

28.    Based on the foregoing, Modernize was authorized by SunPower to act on SunPower's behalf with respect to the telemarketing phone calls to consumers on behalf of SunPower.  In addition and/or in the alternative, Modernize had apparent authority to act on SunPower's behalf with respect to the telemarketing phone calls to consumers described above.  In addition and/or in the alternative, SunPower ratified Modernize's making of the telemarketing calls described above.  Indeed, SunPower knew that Modernize places outbound telemarketing calls to consumers nationwide on behalf of SunPower, to generate solar installation appointments for SunPower, without prior express written consent, or otherwise had knowledge of facts that would have led a reasonable person to investigate further, and yet SunPower ratified Modernize's conduct without further investigation.  In addition and/or in the alternative, SunPower was negligent in supervising Modernize's making of the telemarketing calls described above.  Accordingly, SunPower is responsible for Modernize's making of the telemarketing calls described above.

Class Action Complaint                                                      Case No. 5:21-cv-790

29.     The Federal Communication Commission has instructed that corporations such as SunPower may not avoid liability by having their telemarketing outsourced:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as if often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC notes, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, at ¶ 37 (201) ("FCC 2013 Ruling") (citations omitted).

30.     Neither Plaintiff nor the members of the proposed Classes ever provided Defendants and/or their agents with prior express written consent to receive the telephone calls at issue. Defendants do not have any record of express written consent to place telemarketing calls, or calls featuring an artificial or pre-recorded voice, to Plaintiff or to members of the proposed Classes.

31.     Defendant Modernize willfully violated the TCPA.  Defendant Modernize was aware that it was making calls that violated each element of the TCPA, as alleged above.  In fact, in 2019, Modernize paid $800,000 to settle a TCPA class action based, in part, on telemarketing calls made in violation of the TCPA.  *Hopkins V. Modernize, Inc.,* No. 4:17-CV-40087 (D.Mass).  In the alternative, Modernize was reckless or willfully blind to the fact that it was making calls that violated each element of the TCPA.

32.     SunPower is liable for the willful TCPA violations of its agent, Modernize, committed within the scope of Modernize's authority.

33.     In addition or in the alternative, Defendant SunPower was willful based on its own knowledge.  SunPower was aware that Modernize was making the above-described, violative calls on its behalf.  A simple google search reveals Modernize's history of making violative calls.  In the alternative, SunPower was recklessly indifferent or willfully blind to the fact that Modernize was making calls that violated each element of the TCPA (as alleged above).

**PLAINTIFF'S ALLEGATIONS**

34.     Plaintiff registered his cell phone number on the DNC on November 4, 2004.

35.     On May 14, 2020 at 9:29 AM, Plaintiff received an unsolicited call from Modernize on behalf of SunPower on his cellular telephone.

36.     Plaintiff missed this call, but a pre-recorded voicemail message was left stating: "Hello, I'm calling on behalf of SunPower Solar. We see that you were thinking about lowering your energy costs with solar energy.  We would love to get you set for an energy consultation to learn the many benefits of switching your home to solar.  Give us a call back when you get this message.  Our toll free number is 888-906-0835.  Again, that's 888-906-0835.  We look forward to hearing back from you."

37.     The above-quoted voicemail specifically mentions the fact that the call was made by Modernize on behalf of SunPower.

38.     When the callback number, 888-906-0835, was called, an agent identified the company as Modernize on behalf of SunPower.

39.     Plaintiff received a 2nd call from Modernize on behalf of SunPower on June 2, 2020 at 9:42 AM.

40.     Again, this call was missed but Plaintiff received a pre-recorded voicemail message that is identical to the message he received on May 14, 2020.

41.     Plaintiff received a 3rd call from Modernize on behalf of SunPower on June 3, 2020 at 2:28 PM.

7

Class Action Complaint                                    Case No. 5:21-cv-790

42.     Again, this call was missed but Plaintiff received a pre-recorded voicemail message that is identical to the message he received on May 14, 2020 and June 2, 2020.

43.     At no time did Plaintiff provide prior express written consent to receive pre-recorded or other telemarketing calls from either Defendant.

44.     The unauthorized telephone calls that Plaintiff received from Modernize on behalf of SunPower, as alleged herein, have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

45.     Defendant Modernize was and is aware that the above-described telephone calls were being made either by it directly, or made on its behalf, and that the telephone calls were being made to consumers who had not provided prior express written consent to receive them.

46.     Defendant SunPower was and is aware that the above-described telephone calls were being made on its behalf, and that the telephone calls were being made to consumers who had not provided prior express written consent to receive them.

## CLASS ACTION ALLEGATIONS

47.     Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes and subclasses:

**Pre-recorded Class**: All persons in the United States who, from four years prior to the filing of this action through trial received a telephone call made by or on behalf of Defendants: (1) promoting home improvement products or services; (2) using an artificial or pre-recorded voice; and (3) for which Defendants and their agents lacked any current record of prior express written consent to place the call at the time the call was made.

**SunPower Pre-recorded subclass**: All persons in the United States who, from four years prior to the filing of this action through trial received a telephone call made by or on behalf of Defendant SunPower: (1) promoting SunPower's products or

services; (2) using an artificial or pre-recorded voice; and (3) for which Defendants and their agents lacked any current record of prior express written consent to place the call at the time the call was made.

**Do Not Call Class**: All persons in the United States who, from four years prior to the filing of this action through trial, received more than one telephone call made by or on behalf of Defendants within a 12-month period (1) promoting home improvement products or services; (2) at a telephone number that had been listed on the National Do Not Call Registry for at least thirty days at the time of each call; (3) where such individual had not entered into any purchase or transaction with Defendants within the 18 months preceding such calls; and (4) for which Defendants and their agents lacked any current record of prior express written consent to place the call at the time the call was made.

**SunPower Do Not Call Class**: All persons in the United States who, from four years prior to the filing of this action through trial, received more than one telephone call made by or on behalf of Defendant SunPower within a 12-month period (1) promoting SunPower's products or services; (2) at a telephone number that had been listed on the National Do Not Call Registry for at least thirty days at the time of each call; (3) where such individual had not entered into any purchase or transaction with Defendants within the 18 months preceding such calls; and (4) for which Defendants and their agents lacked any current record of prior express written consent to place the call at the time the call was made.

The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's counsel and their experts and consultants; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any

1  such excluded persons; and (6) persons whose claims against Defendants have been fully and

2  finally adjudicated and/or released.  Plaintiff anticipates that the Class definitions may need to be

3  amended following appropriate discovery.

4                                      **Rule 23(a)**

5           48.      **Numerosity and Ascertainability**: The exact sizes of the Classes are unknown and

6  not available to Plaintiff at this time, but it is likely that Defendants made telephone calls to

7  thousands of consumers who fall into each of the Classes, such that individual joinder of all

8  members is impracticable.  Members of the Classes can be identified through Defendants' records.

9           49.      **Commonality:** There are many questions of law and fact common to the claims of

10 Plaintiff and the Classes.  Common questions for the Classes include the following:

11 **Pre-recorded Class**

12  •        whether Defendants' conduct violated the TCPA;

13  •        whether Defendants placed, or caused to be placed on their behalf, telephone calls

14           using an artificial or pre-recorded voice to Plaintiff and members of the Pre-recorded

15           Class;

16  •        whether Defendants and/or their agents had prior express written consent to place

17           such calls;

18  •        whether Plaintiff and the members of the Pre-recorded Class are entitled to treble

19           damages based on the willfulness of Defendants' conduct.

20 **Do Not Call Class**

21  •        whether Defendants' conduct violated the TCPA;

22  •        whether Defendants placed multiple calls within a 12-month period to Plaintiff and

23           other consumers whose telephone numbers were registered with the National Do Not

24           Call Registry for at least 30 days at the time of each call;

25  •        whether Defendant engaged in telemarketing without implementing adequate

26           internal policies and procedures for maintaining an internal do not call list;

27

28

                                             10

Class Action Complaint                                        Case No. 5:21-cv-790

- • whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

50.     **Typicality:** Plaintiff's claims are typical of the claims of other members of the Classes, in that Plaintiff and the members of the Classes sustained damages arising out of Defendants' uniform wrongful telemarketing conduct toward Plaintiff and each of the Classes. As a result of this uniform misconduct, Plaintiff and the other members of the Classes suffered the same injuries (in the form of the violations of their statutory rights under the TCPA) and are entitled to identical calculations of statutory damages (per call).

51.     **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Defendants have no defenses unique to Plaintiff.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to the Classes.

### Fed. R. Civ. P. 23(b)(2)

52.     Defendants have acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate.

### Fed. R. Civ. P. 23(b)(3)

53.     **Predominance**: Questions of law and fact common to the class predominate over any questions affecting only individual members, because the claims of Plaintiff and the other members of the Classes all arise from Defendants' uniform campaign of making unauthorized calls to their telephones.  Defendants' liability for all of the calls to all class members hinges on the same law and substantially similar conduct by Defendants, not on law or facts specific to Plaintiff or any other individual class member.  The main issues to be decided, such as the ones identified above in paragraph 49, are common to all class members who received calls as part of Defendants' uniform

campaign of making unauthorized calls.  Moreover, the answers to such common questions will be based on common proof, primarily from information to be found within Defendants' own records.

54.     **Superiority:** Class action treatment is superior to all other available methods for the fair and efficient adjudication of this controversy, and joinder of all parties is impracticable.  The damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions.  Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendants' misconduct on an individual basis.  A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.  Furthermore, the common questions of law and fact in this case can be readily answered with common proof, often from Defendants' own records.  Economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Pre-recorded Class with respect to Defendant Modernize, and on Behalf of Plaintiff and the SunPower Pre-recorded Class with respect to Defendant SunPower)**

55.     Plaintiff repeats and realleges the prior allegations of this Complaint and incorporates them by reference herein.

56.     Defendant Modernize and/or its agents made unwanted solicitation telephone calls to Plaintiff and the other members of the Pre-recorded Class in an effort to sell home improvement goods and services.  When those calls were made to sell Defendant SunPower's goods and services, Defendant Modernize and/or its agents were acting as agents of Defendant SunPower.

57.     These calls used artificial or pre-recorded voices.

58.     These pre-recorded voice calls were made without the prior express written consent of Plaintiff and the other members of the Pre-recorded Class.

Class Action Complaint                                                      Case No. 5:21-cv-790

59.     Defendants have, therefore, violated 47 U.S.C. §§ 227(b)(1)(A)(iii) and (b)(1)(B). As a result of Defendants' conduct, Plaintiff and the other members of the Pre-recorded Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Do Not Call Class with respect to Defendant Modernize, and on Behalf of Plaintiff and the SunPower Do Not Call Class Class with respect to Defendant SunPower)**

60.     Plaintiff repeats and realleges the prior allegations of this Complaint and incorporates them by reference herein.

61.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government."

62.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

63.     47 C.F.R. § 64.1200(e) provides that 47 C.F.R. §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" and the Commission's Report and Order, in turn, provides as follows: "The Commission's rules provide that companies making telephone solicitation to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless

1  telephone numbers.  We believe that wireless subscribers should be afforded the same protections as

2  wireline subscribers."

3       64.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any

4  call for telemarketing purposes to a residential telephone subscriber unless such person or entity has

5  instituted procedures for maintaining a list of persons who request not to receive telemarketing calls

6  made by or on behalf of that person or entity" and then describes certain minimum standards for

7  those procedures.

8       65.     Defendant Modernize and/or its agents made more than one unsolicited

9  telemarketing call to Plaintiff and members of the Do Not Call Class within a 12-month period

10  without having prior express written consent to place such calls.  Each such call was directed to a

11  telephone number that had been registered with the National Do Not Call Registry for at least 30

12  days at the time of the call.  When those calls were made to sell Defendant SunPower's goods and

13  services, Defendant Modernize and/or its agents were acting as agents of Defendant SunPower.

14  Plaintiff and members of the Do Not Call Class did not provide consent to receive such

15  telemarketing calls from Defendants or their agents and/or neither Defendants nor their agents have

16  any record of consent to place such telemarketing calls to Plaintiff or the members of the Do Not

17  Call Class.

18       66.     Defendant violated 47 C.F.R. §§ 64.1200(d) and (e) by causing calls to be initiated

19  for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and

20  the Do Not Call Class, without instituting procedures that comply with the regulatory minimum

21  standards for maintaining a list of persons who request not to receive telemarketing calls.

22       67.     Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call

23  Class received more than one telephone call in a 12-month period made by or on behalf of

24  Defendants in violation of 47 C.F.R. § 64.1200, as described above.

25       68.     As a result of Defendants' conduct as alleged herein, Plaintiff and the Do Not Call

26  Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to

27  receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

28

69.     For Defendants' willful misconduct, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff individually and on behalf of the Classes, prays for the following relief:

1.     An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing his attorneys as Class Counsel;

2.     An award of actual and/or statutory damages and costs;

3.     Enhanced damages for willful misconduct, up to treble the amount of statutory damages;

4.     An award of attorney's fees;

5.     An order declaring that Defendants' actions, as set out above, violate the TCPA;

6.     An injunction requiring Defendants to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

7.     Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial.

**TYLER BAKER**, individually and on behalf of all others similarly situated,

DATED this 1st day of February, 2021.

By: /s/ *Simon Franzini*
Simon Franzini
DOVEL & LUNER, LLP
simon@dovel.com
201 Santa Monica Blvd, Suite 600
Santa Monica, CA 90401
Telephone: (310) 656-7066

*Attorneys for Plaintiff and the putative Classes*

Class Action Complaint                                    Case No. 5:21-cv-790